IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **VICTOR WALKER, JR.,** )<br>)<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**THE CITY OF SANDERSVILLE,** )<br>)<br>)<br>**Defendant.** )<br>_____) | CIVIL ACTION NO. 5:20-CV-438 (MTT) |

## ORDER

Plaintiff Victor Walker, Jr. was tased by a City of Sandersville police officer. The City of Sandersville, the sole defendant, has moved for summary judgment. Doc. 10. For the following reasons, the City's motion is **DENIED**.

### I. BACKGROUND[1]

On December 1, 2016, Brian Dudley, an officer with the Sandersville Police Department, made a traffic stop on a vehicle driven by Plaintiff Victor Walker, Jr. because the vehicle's window tint appeared to be too dark. Docs. 10-2 ¶ 4; 15 ¶ 4. Dudley, along with Officer Chad Boomershine, approached the vehicle and spoke with Walker and his passenger. Docs. 10-2 ¶ 7; 15-4 ¶ 7. Both officers smelled marijuana, and Walker, who Dudley knew to be a suspected drug dealer, consented to a search of his vehicle. Docs. 10-2 ¶¶ 6, 8, 11; 15-4 ¶¶ 6, 8, 11.

---

[1] Unless otherwise stated, the facts are undisputed and are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

Dudley asked Walker and his passenger to get out of the car and told Walker he was going to search him for weapons. Docs. 10-2 ¶¶ 13, 14; 15-4 ¶¶ 13, 14; Body Camera Video at 5:30. Suddenly, Walker ran. Docs. 10-2 ¶¶ 15; 15-4 ¶ 15. Dudley grabbed Walker's jacket, but Walker tore loose and continued to flee. Docs. 15-2 at 2; 15-3 ¶4; Body Camera Video at 5:37. Boomershine attempted to catch Walker but fell in his attempt. Body Camera Video 5:41. The parties dispute whether Walker shoved Dudley in his attempt to break away and whether there was a "skirmish" between the two. Docs. 10-2 ¶¶ 15, 16, 17; 15-4 ¶¶ 15, 16, 17. The video does not clearly reveal whether Walker fought or whether he simply fled. For summary judgment purposes, the Court accepts Walker's version of the details. Walker testified that:

> When [Dudley] shot me with the Taser, I was running away from him. I did not fight him or struggle with him in any way. I got out of the car because he told me to, and then I started running away. When I started to run, he grabbed my jacket and then lost his grip on it, but I did not push him, hit him, or take a swing at him. I was just running away on foot, and he was chasing me.

Doc. 15-2 ¶ 3.

Dudley chased Walker momentarily and then, from a distance of about 25 feet, Dudley fired his taser at Walker, aiming for Walker's back as he was trained. Docs. 10-2 ¶ 22; 15-4 ¶ 22. One of the taser prongs struck Walker in the back, and the other prong struck his head. Docs. 10-2 ¶¶ 21, 22, 25; 15-4 ¶¶ 21, 22, 25. Walker, in full stride, then fell face-first on the sidewalk. Docs. 10-2 ¶ 26; 15-4 ¶ 26. Approximately eleven seconds passed from when Walker began to run to when he was tased. Body Camera Video at 5:33-5:43. After checking Walker's condition, Dudley requested EMS, and an ambulance arrived five minutes later. Docs. 10-2 ¶ 38; 15-4 ¶ 38. The parties agree that Dudley used his taser in compliance with the city's policy. Docs. 15 at 1-2;

10-2 ¶¶ 29, 33; 15-4 ¶¶ 29, 33.  Walker claims that he suffered a brain injury and has seizures because of the fall.  Doc. 15-3 ¶¶ 7-8.

Walker has brought a Fourth Amendment excessive force claim against the City of Sandersville pursuant to 42 U.S.C. § 1983 as well as other state law claims.

## II. STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (alterations in original) (quoting *Celotex*, 477 U.S. at 324).  Alternatively, the

movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge …. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

The Eleventh Circuit recently summarized the standard for determining whether an individual's right to be free from the use of the excessive force was violated in the course of an arrest.

> The amount of force used by an officer "must be reasonably proportionate to the need for that force." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002). "'The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene,' and the inquiry 'is an objective one.'" *Smith v. LePage*, 834 F.3d 1285, 1294 (11th Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). A court cannot apply this standard mechanically. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Instead, the inquiry "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396.

> We therefore consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397.

*Bradley v. Benton*, 10 F.4th 1232, 1240 (11th Cir. 2021).

Moreover, if an officer uses deadly force or force that could cause severe bodily injury, a court must also consider

> [w]hether the officer (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others' or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible.

*Id*. at 1240-41 (citations omitted).

Two things combine to put this case in an unusual posture. First, Walker brings claims only against the City; he has not sued Dudley. This means that qualified immunity is not a defense to Walker's § 1983 claims and official immunity is not a defense to his state law claims. If those defenses were available, Walker's claims almost certainly would fail. For example, there is no clearly established law that would have informed Dudley that he should not have tased Walker as he fled the scene.

But Walker pays a price for avoiding immunity defenses by suing only the City. To prevail on his § 1983 claim against the City, he must prove that any alleged constitutional violation was caused by a policy or custom of the City. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978); *Rooney v. Watson*, 101F.3d 1378, 1381 (11th Cir. 1996). Normally, this is a heavy burden, and it may

*eventually* prove to be an unsurmountable burden here.[2]  Only eventually, because the City has not moved for summary judgment on the grounds that there is no causal connection between a City policy or custom and Dudley's alleged use of excessive force.  This seems odd.  Although Walker's expert roundly criticized the City's written policy, that policy, as will be discussed, contains many of the caveats, warnings, and limitations regarding tasers that come into play here.  But the City, for now, does not dispute that Dudley acted in accordance with a City policy.  In fact, Walker testified that the City's "policy says [police officers] can tase a subject that's fleeing," and the City's police chief testified in an affidavit: "The police department has a policy authorizing the use of tasers when a subject of an arrest is fleeing.  The policy authorizes the use of tasers in that instance because tasers are considered to be non-lethal."  Doc. 10-3 at 1-2.

Ironically though, the City's written policy on tasers is an appropriate starting point for the Court's analysis because it addresses many of the factors and considerations relevant to the question of whether a jury could reasonably find that Dudley used excessive force.  First, the policy recognizes that tasers can cause serious injury.  It places tasers in the category of "Less Lethal [not non-lethal] Force Technology … which is defined as 'those items which, when used properly, are less likely to result in death or serious physical injury than force commonly referred to as deadly force.'"  *Id*. at 15.  The policy describes generally the circumstances when a taser can be deployed.

> The taser may be used to control a dangerous or violent subject when deadly force does not appear to be justified or necessary, or attempts to subdue the subject by conventional means have been, or likely will be, ineffective in the situation at hand, or there is reasonable expectation that

---

[2] A plaintiff must show that the municipal policy "was the moving force of the constitutional violation." *Vineyard v. Cnty. of Murray, Ga*., 900 F.2d 1207, 1213 (11th Cir.1993); *Grech v. Clayton Cnty., Ga*., 335 F.3d 1326, 1330 (11th Cir. 2003).

it would be unsafe for officers to approach the subject within contact range of other, traditional law enforcement tools which fall into the non-deadly force category.

*Id*. at 16.  Thus, the policy continues, tasers can be used if a suspect is "punching and/or kicking" or threatening to do so, when lesser force options are ineffective, when the officer believes the suspect poses a "credible threat," and when a suspect poses a threat from a distance and the officer would be at risk if he approached the suspect.  *Id*. at 24.  Consistent with this, the policy provides additional "considerations for [taser] deployment:"

> a)  imminent threat … b) suspect actively, forcibly resisting arrest … c) circumstances are tense, uncertain and rapidly evolving … d) severity of the crime at issue … e) the suspect is attempting to evade or flee from officers to avoid arrest of a high misdemeanor or felony.

*Id*. at 25.  Finally, the policy recognizes that under some circumstances a subject's fall after being tased could cause serious injury or death and prohibits the use of a taser in such circumstances.  *Id.* at 23, 24.

In short, and the criticisms of Walker's expert notwithstanding, nothing in the City's *written* policy seems to allow an officer to tase a fleeing, non-violent person who is suspected of committing only a minor offense, particularly when the suspect is sprinting on a hard surface and thus more likely to suffer injury from an uncontrolled fall.[3]

Turning to the disputed facts here, a jury could reasonably find that an objective officer could not have reasonably concluded that Walker had committed a serious offense.  Certainly, a window tint violation is not a serious offense.  The smell of

---

[3] Of course, the Court does not imply that an officer's failure to follow the City's written policy would always result in a Constitutional violation or, on the other hand, that following the City's written policy could never result in a constitutional violation.

marijuana suggests the possibility that Walker had committed another offense but that had not been established and the seriousness of that possible offense was unknown. For example, the evidence does not reveal whether Dudley smelled burnt marijuana—which would suggest a minor offense—or raw marijuana—which possibly, but only possibly, could suggest a more serious offense. And while Dudley suspected Walker was a drug dealer, that does not establish, on the disputed facts here, that an objective officer could have concluded that Walker had committed a serious offense.

Next, a jury could reasonably find that Walker did not violently resist arrest. While that point is hotly disputed, that is the point. Based on Walker's and Dudley's testimony and the inconclusive video, the Court cannot say as a matter of law that Walker fought with Dudley as he fled.

Also, Dudley knew Walker, which is not surprising given that Sandersville is a small town. Dudley had Walker's driver's license and the car Walker was driving. A jury could reasonably find that force that could cause injury was not necessary to stop Walker's flight; he wouldn't be free long.

Finally, a jury could find that a reasonable officer would have realized that tasing Walker while he was running could cause serious injury. The difference between tasing a suspect who could fall from an elevated location[4] and tasing a suspect running on a hard surface is only one of degree. In both situations, an uncontrolled fall can cause injury.

---

[4] In *Bradley v. Benton*, the Eleventh Circuit stated that it had "little trouble concluding that [an officer's] use of force was excessive" when he tased a fleeing suspect who was atop an eight-foot wall. 10 F. 4th 1232, 1240 (11th Cir. 2021). The Circuit held that although a taser is generally not a deadly weapon, a jury could find that the officer used it in a way in which he knew would create a substantial risk of serious injury. *Id*. at 1241.

Of course, a jury could also find that Dudley's use of force was appropriate. Given the circumstances and the split-second decision Dudley had to make, a jury could easily conclude that Walker cannot carry his burden of proving that the force used was not reasonably proportionate to the amount of force needed. But the Court cannot reach that conclusion as a matter of law. In short, the relevant facts and the conclusions to be drawn from those facts are disputed.[5]

### A. Walker's State Law Claims

Walker has also asserted respondeat superior claims against the City based on Dudley's alleged negligence, battery, and violations of the Georgia Constitution. Doc. 1-1 at 404-05. Specifically, Walker claims that Dudley's actions violated clauses of the Georgia Constitution that prohibit unreasonable seizures of the person by law enforcement officers and abuse during arrest. *Id*. at 405. Walker states that it "is axiomatic that the use of excessive force constitutes the state law tort of battery, and that a seizure which is unreasonable under the Fourth Amendment ought to also be unreasonable under the analogous provision of the Georgia Constitution." Doc. 15 at 15. The City argues, however, that the force used by Dudley was reasonable, so Walker cannot "succeed on his claim for battery, negligence, or excessive force because there was no 'unlawful touching,' no breach of any duty, and no disproportionate use of force." Doc. 10-1 at 17.

---

[5] With qualified immunity off the table, the resolution of the City's motion requires the fact sensitive inquiry necessary to determine if force is excessive. That inquiry turns on reasonableness and requires consideration of multiple factors in light of the facts and circumstances. Inherently, this is an analysis for juries and not judges. It calls to mind an oft-quoted observation of Judge Easterbrook: "If we are to have multiple factors, we also should have a trial." *Sec'y of Lab., U.S. Dep't of Lab. V. Lauritzen*, 835 F.2d 1529, 1542 (7th Cir. 1987) (Easterbrook, J., concurring). The Court cannot say as a matter of law that Dudley did not use excessive force.

Whether a seizure is lawful under the Georgia Constitution is analyzed under the same standard used for the Fourth Amendment. *Draper v. Reynolds*, 278 Ga. App. 401, 403-04 (2006); *City of East Point v. Smith*, 258 Ga. 111, 112 (1998). Moreover, "any unlawful touching is a physical injury to the person and is actionable as a battery." *Haile v. Pittman*, 194 Ga. App. 105, 106 (1989). Thus, if a reasonable jury could find that the force used by an officer was excessive under the Fourth Amendment, then a jury could also find that the force was unlawful under the Georgia Constitution and constituted negligence or a battery.

As explained, a reasonable jury could conclude that Dudley's use of force was unreasonable and excessive. Therefore, because the City's argument for dismissal of Walker's state law claims relies on the Court finding that the force used by Dudley was reasonable—a finding the Court did not make—summary judgment as to Walker's state law claims is **DENIED**.

### B. Assumption of the Risk

The City argues that summary judgment should be granted as to Walker's negligence claim because Walker assumed the risk of an injury when he fled from the police. Doc. 10-1 at 17. "The defense of assumption of the risk requires: (1) that the plaintiff had some actual knowledge of the danger; (2) that he understood and appreciated the risk therefrom, and (3) that he voluntarily exposed himself to such risk." *Young v. Brandt*, 225 Ga. App. 889, 891 (1997) (citation omitted). The knowledge component requires that a plaintiff understand "the specific, particular risk of harm associated with the activity or condition that proximately causes injury." *Vaughn v. Pleasant*, 266 Ga. 682, 684 (1996). "In its simplest and primary sense, assumption of the risk means that the plaintiff, in advance, has given his consent to relieve the

defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone." *Young*, 225 Ga. App. at 891 (citations omitted). Assumption of the risk is generally not an issue for summary judgment. *Sones v. Real Estate Dev. Group, Inc.* 270 Ga. App. 507, 509 (2004). But where the evidence clearly shows that the jury could draw only one reasonable conclusion, summary judgment is appropriate. *Id*.

Here, summary judgment based on assumption of the risk is inappropriate. As explained, a reasonable jury could find that the force used against Walker was excessive. The City points out that Walker was aware that "bad things" could happen if he ran from the police, including force being used against him. Doc. 10-1 at 18-20. But the City's argument cannot extend to a negligence claim arising out of a police officer's *excessive* force. While Walker may have known there was a risk of some force being used in his arrest, a reasonable jury could conclude that he did not knowingly expose himself to the use of unconstitutional excessive force. Accordingly, the City's motion for summary judgment on Walker's negligence claim based on assumption of the risk is **DENIED**.

### IV. CONCLUSION

For the reasons stated above, the City's motion for summary judgment (Doc. 10) is **DENIED**.

**SO ORDERED**, this 18th day of November, 2021.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
